UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAMUJA HYDARA,

                          Plaintiff,

    v.

JASON BURGER, L.P.N.; AMANDA
BASHANT, R.N.; JONATHAN ATKIN,
C.O.,[1]

                          Defendants.

No. 14-CV-1415 (KMK)

OPINION AND ORDER

Appearances:

Hamuja Hydara
Marcy, NY
*Pro Se Plaintiff*

Kellie E. Lagitch, Esq.
Assistant County Attorney for Orange County
Goshen, NY
*Counsel for Defendant Atkin*

Cathleen K. Rebar, Esq.
Frank V. Kelly, Esq.
Stewart Bernstiel Rebar & Smith
New York, NY
*Counsel for Defendants Burger and Bashant*

KENNETH M. KARAS, District Judge:

    Pro se Plaintiff Hamuja Hydara ("Plaintiff"), a former inmate at Orange County Correctional Facility, filed the instant complaint ("Amended Complaint"), pursuant to 42 U.S.C. § 1983, against Corrections Officer Jonathan Atkin ("Atkin"), Licensed Nurse Jason Burger

---

[1] Defendant Jonathan Atkins' last name is actually spelled "Atkin," without an "s." The Clerk of Court is directed to amend the caption accordingly. (*See* Notice of Mot. to Dismiss (Dkt. No. 56) (noting that Jonathan Atkin was "sued incorrectly herein as 'Jonathan Atkins'").)

("Burger"), and Registered Nurse Amanda Bashant ("Bashant") (collectively, "Defendants"). (Am. Compl. (Dkt. No. 26).) Plaintiff alleges that Defendants were deliberately indifferent to his medical needs because he was not treated for a hand injury resulting from an altercation with another inmate. (*See generally id.*)

Before the Court is Defendants' Motion To Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendant Atkin's Motion to Dismiss Co-Defendants' Cross-Claim against him for indemnification. (*See* Notice of Mot. To Dismiss (Dkt. No. 56); Mem. of Law in Support of Def. Atkin's Mot. to Dismiss ("Atkin's Mem.") (Dkt. No. 58); Decl. of Frank V. Kelly, Esq. in Supp. of Mot. to Dismiss ("Kelly Decl.") (Dkt. No. 61); Mem. of Law on Behalf of Defs. Burger and Bashant ("Nurses' Mem.") (Dkt. No. 62).) Defendants claim that Plaintiff's Action is barred for failure to exhaust available administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), that Plaintiff fails to state a claim, and that his request for declaratory and injunctive relief is moot. (Atkin's Mem; Nurses' Mem.) For the following reasons, Defendants' Motions are granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Dkt. No. 26), and are taken as true for the purpose of resolving the instant Motion. Plaintiff was a prisoner incarcerated at Orange County Correctional Facility ("Orange County") during the time of the alleged events. (Am. Compl. II(A), IV(A).)[2]

On January 15, 2014, between 9:00 PM and 9:30 PM, Plaintiff returned from religious

---

[2] The Complaint is on a standard prisoner complaint form without paragraph numbering. The Court will therefore cite to the Complaint by heading and sub-heading number.

services and entered "the Sally Port" in the Delta 3 (D-3) Housing Unit at Orange County. (*Id.* at II(C), (D).) It "took quite a bit of time" for Plaintiff and the other inmates with him to be buzzed in. (*Id.* at II(D).) "At this time, [Plaintiff] got into a brief altercation with another John Doe inmate. The John Doe inmate threw a punch at [Plaintiff] and [Plaintiff] was forced to defend [him]self." (*Id.*) Plaintiff and the other inmate "threw wild punches at one another," one of which hit "[Plaintiff] on top of [his] right hand." (*Id.*) This blow "caused [Plaintiff's] hand to hit a jagged edge on the corner where there was a piece of aluminum protruding." (*Id.*)

Plaintiff "was then locked in [his] cell," and his "hand became very difficult to use." (*Id.*) He then "informed the housing officer Jonathan Atkin[] that [he] could not use [his] right hand." (*Id.*) Atkin informed Plaintiff "that he would call medical for [Plaintiff], which he never did." (*Id.*; *see also id.* ("My medical needs were never met nor my injuries looked into.").) Plaintiff asked for the tapes of this incident, but was told that Atkin "didn't know what [Plaintiff] was talking about." (*Id.*) Contrary to what Plaintiff alleges about Atkin's alleged refusal to refer Plaintiff to medical, "[i]mmediately after the incident[,] [Plaintiff] was taken to the infirmary, where [he] was interviewed by" Bashant and Burger, both nurses. (*Id.*)[3] "There was no medical treatment given for [his] injury," and Plaintiff's "plea for medical treatment of [his] hand was ignored." (*Id.*)

As a result of the altercation, Plaintiff suffered a "[b]roken right hand and wrist, severe swelling, and prolonged pain," as well as "[r]estricted movement." (*Id.* at III.) He therefore requests a declaration "advising medical and correction[al] staff that intentional and . . .

---

[3] The Court notes the inconsistency between the allegations that Plaintiff's injuries were never looked into and that he was immediately taken to the infirmary to be interviewed by nurses after the incident. Construing the facts in the light most favorable to him, Plaintiff may be alleging that the interviews did not result in any, or at least sufficient, treatment of his injuries.

deliberate withholding of medical treatment will not be tolerated," as well as $500,000 in compensatory damages and $1,000,000 in punitive damages. (*Id.* at V.)

B. Procedural Background

Plaintiff filed an initial Complaint on February 19, 2014, against Orange County Correctional Facility Medical Department, Correctional Medical Care, Inc., and Nurses John Doe and Jane Doe. (Dkt. No. 2.) The Court granted Plaintiff's pro se request to proceed in forma pauperis on April 3, 2014. (Dkt. No. 3.) On April 30, 2014, the Court issued an Order dismissing Orange County Correctional Facility Medical Department and directing that the County of Orange be added as a Defendant, directing service on the named Defendants, and ordering the Orange County Attorney to identify the unidentified John and Jane Doe Defendants pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (per curiam). (Order of Service (Dkt. No. 5).) The Orange County attorney complied with its *Valentin* obligations on May 23, 2014, identifying Burger, Bashant, and Atkin. (Letter from Kellie E. Lagitch, Esq. to Court (May 23, 2014) (Dkt. No. 6).) However, Plaintiff did not receive the Order of Service or other mailings from the Court, which were returned as undeliverable. (*See* Docket (entries for May 13 and 14, 2014).)

The Court scheduled a Rule 16 Conference for May 26, 2016, (Dkt. No. 8), but this mailing to Plaintiff was also returned as undeliverable, (*see* Dkt. (entry for Apr. 25, 2016)). The Court therefore issued an Order to Show Cause for failure to prosecute on April 27, 2016. (Dkt. No. 9.) On May 10, 2016, Correctional Medical Care informed the Court that Plaintiff had been transferred from Orange County to Mid-State Correctional Facility. (Letter from Shelly L. Baldwin, Esq. to Court (May 5, 2016) (Dkt. No. 10).) The Court sent a copy of the Order to Show Cause to Plaintiff's new address. (Dkt. No. 11.) Plaintiff did not appear at the scheduled

Rule 16 conference; however, the Court received a letter from Plaintiff the same day stating his confusion about what to do. (*See* Dkt. (entry for June 16, 2016); Letter from Plaintiff to Court (Jun. 16, 2016) (Dkt. No. 12).) The Court scheduled another conference for July 18, 2016 and ordered Plaintiff to advise the Court about whether he intended to prosecute this Action by July 1, 2016. (Order (Dkt. No. 13).) Plaintiff wrote to the Court that he intended to prosecute the Action, and requested counsel be appointed. (Letter from Plaintiff to Court (July 7, 2016) (Dkt. No 14).) The Court denied Plaintiff's application without prejudice. (Order (Dkt. No. 15).)

On July 18, 2016, the Court held another conference. (*See* Dkt. (entry for July 18, 2016).) The Court issued a new Order of Service the next day, directing Plaintiff to file an Amended Complaint naming the unidentified Defendants and directing service on the currently identified Defendants. (Order of Service (Dkt. No. 17).) After receiving an extension, (Dkt. No. 21), Plaintiff filed the instant Complaint, naming only Defendants Burger, Bashant, and Atkin as Defendants. (Am. Compl. (Dkt. No. 26).) On November 22, 2016, the Court ordered Defendants to provide addresses for Defendants Berger and Bashant, (Dkt. No. 32), which they did, (Dkt. No. 33). The Court then issued a new Order of Service, directing service of the Complaint on Defendants Berger, Bashant, and Atkin. (Order of Service (Dkt. No. 35).)

Defendants Burger and Bashant filed an Answer and a Cross-Claim for indemnification against Atkin on January 31, 2017. (Answer (Dkt. No. 40).) However, because service was unsuccessful on Atkin, (Dkt. No. 42), the Court ordered the Orange County Attorney to provide a current service address for Atkin, (Dkt. No. 43). The Orange County Attorney confirmed that the original address was correct, (Letter from Kellie E. Lagitch, Esq. to Court (Mar. 8, 2017) (Dkt. No. 44)), and the Court directed service be re-attempted, (Dkt. Nos. 46, 47). Atkin was served on June 9, 2017. (Dkt. No. 52.)

On July 20, 2017, Atkin filed a pre-motion letter indicating the grounds upon which he would move to dismiss the Complaint. (Letter from Kellie E. Lagitch, Esq. to Court (July 20, 2017) (Dkt. No. 53).) After the Court set a briefing schedule, (Dkt. No. 55), Atkin filed a Motion to Dismiss and accompanying papers, (Notice of Mot. to Dismiss; Atkin's Mem.; Decl. of Kellie E. Lagitch in Supp. of Mot. to Dismiss ("Lagitch Decl.") (Dkt. No. 57).) On September 25, 2017, Bashant and Burger wrote to the Court joining in Atkin's Motion and arguing that their Cross-Claim should not be dismissed if Plaintiff's state law claims survive. (Nurses' Mem.; Kelly Decl.) On October 18, 2017, Atkin filed a Reply Declaration in support of the Motion to Dismiss. (Atkin Reply Decl. (Dkt. No. 64).) Plaintiff did not file an opposition.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

6

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

7

consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted). Finally, the "failure to oppose Defendants' [M]otion [T]o [D]ismiss does not, by itself, require the dismissal of [Plaintiff's] claims." *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013). Rather, "the sufficiency of a complaint is a matter of law that the [C]ourt is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

### B. Analysis

#### 1. Exhaustion

Defendants argue that Plaintiff's § 1983 claim is barred because he failed to exhaust his administrative remedies under the PLRA. (Aktin Mem. 11–14; Nurses' Mem. 13–15.) "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement. Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints. However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations and internal quotation marks omitted).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conventionally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2007), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so *properly*. . . . Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules." *Williams*, 829 F.3d at 122 (alterations, citations, and internal quotation marks omitted).

However, the PLRA contains one "textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* Available "grievance procedures . . . are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation marks omitted). In *Ross*, the Supreme Court provided "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. The Supreme Court explained that an administrative remedy is unavailable when:

> (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;
> (2) an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;
> (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

9

*Ross*, 136 S. Ct. at 1859–60. The Second Circuit recently noted "that the three circumstances discussed in *Ross* do not appear to be exhaustive," but declined to "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." *Williams*, 829 F.3d at 123 n.2.

The New York State Department of Corrections and Community Supervision Inmate Grievance Program ("IGP") outlines the procedures that apply to grievances filed by inmates in New York State correctional facilities. The IGP provides for a three-step grievance process. *See* 7 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 701 et seq.; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))). Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). Once filed, the representatives of the Inmate Grievance Resolution Committee ("IGRC") have up to 16 calendar days to resolve the grievance informally. *Id.* § 701.5(b)(1). If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii). The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the IGRC's written response, although the appealing party can seek an exception to the time limit. *See id.* § 701.5(c)(1). The third and final step is to appeal the superintendent's decision to the Central Office Review Committee ("CORC"), which the prisoner must do within seven days of the superintendent's written response to the grievance.

*Id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit. *See id.* "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

In his Amended Complaint, Plaintiff alleges that he filed a grievance at Orange County relating to the alleged lack of medical treatment for his hand. (Am. Compl. IV(E).)[4] However, Plaintiff also alleges that, as of the date of filing the Complaint, he has not received a response to this grievance or completed the full IGP process. (*See id.* at IV(E)(2) (alleging that the result of filing a grievance was "[n]one as of yet, but I intend to see this through"); *id.* at IV(F)(1) ("I promise to send a copy of my decision as soon as I get it."); *id.* at IV(F)(2) ("Until this day I have not received a response to the grievance. I will keep you posted if and when I hear anything."); *id.* ("For the record, I filed a grievance addressed it to the grievance committee and mailed it . . . No response.").)[5] Indeed, Plaintiff specifically alleges that he has not undertaken

---

[4] Plaintiff inexplicably checked "No" in response to the question "Did you file a grievance in the . . . correctional facility where your claim(s) arose?" (Am. Compl. IV(D).) However, he alleges in several other places that he did file a grievance. (*See id.* at IV(E)(1) ("I grieved my hand being broken for 2 weeks, no medication."); *id.* at IV(F)(1) ("I did file one."); *id.* at IV(F)(2) ("Again, I filed a grievance.").) Therefore, construing the Complaint liberally and drawing all reasonable inferences in favor of Plaintiff, the Court will assume he filed a grievance.

[5] The Court acknowledges that Plaintiff claims he mailed his grievance on March 20, 2014, and that the instant Amended Complaint was filed on August 25, 2016. (*See* Am. Compl. IV(F)(2).) However, he also alleges that he had not received a response to his grievance or appealed it through the IGP process in that same Complaint. Thus, even assuming more steps could have been undertaken between March 20, 2014 and August 25, 2016, Plaintiff pleads that he had not pursued them—or, in other words, exhausted them—at the time he filed the Complaint. *See Jones v. Block*, 549 U.S. 199, 202 (2007) (explaining that the PLRA "requires prisoners to exhaust prison grievance procedures before filing suit"); *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (detailing the reasons why the PLRA requires prisoners to grieve their complaints "before filing suit"). It is possible that Plaintiff simply copied some of the exhaustion portion of the Amended Complaint from his initial Complaint,

11

any appeals of his grievance *because* he has not yet received an initial decision. (*See id.* at

IV(E)(3) (answering question to "[d]escribe all efforts to appeal to the highest level of the

grievance process" with "[n]one").) Because Plaintiff specifically pleads that he has not

completed the full IGP process, his failure to exhaust is "clear on the face of the [C]omplaint."

*Williams*, 829 F.3d at 122; *see also Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *5

(S.D.N.Y. Dec. 21, 2016) (holding that the plaintiff did not fully exhaust when he "did not

receive a response" to his grievance and did not appeal the matter to the highest administrative

body); *Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *3 (S.D.N.Y. Feb. 28, 2015)

(finding it "clear from the face of the [c]omplaint that [the] [p]laintiff did not exhaust the IGRP

procedure" where, "in response to the question 'Describe all efforts to appeal,' Plaintiff wrote

'N/A' because 'nothing was done' following the filing of his grievance"). And, because Plaintiff

alleges no facts from which the Court could infer that the IGP was "unavailable" to him, his

failure to exhaust cannot be excused. *See Ross*, 136 S. Ct. at 1859–60 (listing types of

unavailability); *Henrius v. County of Nassau*, No. 13-CV-1192, 2016 WL 1178358, at *6

(E.D.N.Y Mar. 24, 2016) (granting motion to dismiss "[s]ince . . . it [was] clear from the face of

[the] complaint . . . that [the plaintiff] did not properly exhaust all available remedies . . . and

there [were] no allegations . . . from which it may reasonably be inferred that administrative

remedies were not available to him with respect to such conduct"); *cf. Shaw*, 2016 WL 7410722,

at *5 (concluding that "the Court [could not] determine from the face of the complaint whether

the prison's administrative remedies were in fact available" because the plaintiff alleged that

correction officers "knew he was trying to grieve the issues . . . so they must have been

---

(*see* Dkt. No. 2; Letter from Plaintiff to Court (Aug. 11, 2016) (Dkt. No. 22) (requesting copy of original complaint because he lost it in prison transfer)), but that complaint was filed before March 20, 2014, and in any event, Plaintiff may correct this error upon amending his complaint.

misplacing his mail," which could plausibly plead the third category of unavailability under *Ross* (citations, alterations, and internal quotation marks omitted)).

The Court therefore grants Defendants' Motion to Dismiss Plaintiff's § 1983 claim for failure to exhaust his administrative remedies under the PLRA.[6]

### 2. State Law Claims and Cross-Claim

Defendants argue that if the Complaint can be construed as raising any state law claims for negligence or malpractice, those claims should be dismissed because Plaintiff's claims are untimely. (Atkin's Mem. 17.) The Court need not reach the merits of this argument, because, having dismissed the federal claims against Defendants, it declines to exercise supplemental jurisdiction over any pending state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ."); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well"); *Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims."); *Oquendo v. Quality Choice Corr. Healthcare*, No. 16-CV-1828, 2017 WL 3927293, at *6 (S.D.N.Y. Sept. 6, 2017) (declining to exercise supplemental jurisdiction over the plaintiff's possible state law claims because it had already dismissed his § 1983 claims relating to failure to provide him proper medical care).

---

[6] Because the Court concludes that Plaintiff pleads his failure to appeal, and therefore exhaust, it need not reach Defendants' alternative arguments about exhaustion. (Atkin's Mem. 13–14.) Similarly, the Court does not reach Defendants' claims about the merits of Plaintiff's deliberate indifference claim. (Atkin's Mem. 5–11; 16–17.)

13

However, Plaintiff may reassert these state law claims in any amended complaint, and the Court's acceptance of jurisdiction over those claims will be reassessed at the appropriate time.[7]

Moreover, because the Court dismisses Plaintiff's § 1983 claim and declines to exercise supplemental jurisdiction over Plaintiff's state law claims, Bashant's and Burger's Cross-Claim for indemnification against Atkin is dismissed without prejudice.

3. Mootness

Defendants argue that Plaintiff's request for declaratory or injunctive relief against them is moot, because Plaintiff is no longer incarcerated at Orange County. (Atkin's Mem. 15; Nurses' Mem. 15.)[8] Plaintiff requests declaratory and/or injunctive relief "advising medical and correction[al] staff that intentional and the deliberate withholding of medical treatment will not be tolerated." (Am. Compl. V.) However, Plaintiff was transferred from Orange County to Mid-State Correctional Facility on March 19, 2014, and remains there today. (*See* Letter from Shelly L. Baldwin, Esq. to Court (May 5, 2016) (Dkt. No. 10).) *See also* Department of Corrections and Community Supervision, *Parole Board Calendar*, DIN # 16A1018,

---

[7] While the Court has not addressed the merits of Defendants' Motions To Dismiss the state law claims, Plaintiff is advised that he must plead to having timely satisfied the state notice-of-claim requirements if he elects to file a Second Amended Complaint. *See O'Leary v. City of New York*, 938 F. Supp. 2d 410, 416 (E.D.N.Y. 2013) ("Notice of claim requirements are strictly construed by New York state courts, and failure to provide a notice of claim generally requires dismissal of a plaintiff's state law claims." (internal quotation marks omitted)).

[8] The Court notes that this argument relating to the Court's jurisdiction should have been brought pursuant to Rule 12(b)(1), rather than Rule 12(b)(6). *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (noting that when a case becomes moot, there is no longer a "case or controversy," thereby depriving a federal court of subject matter jurisdiction). However, this posture does not affect the Court's analysis, because "[t]he only substantive difference" between a motion to dismiss under Rule 12(b)(6) and Rule 12(b)(1) is that, under the latter motion, Plaintiff bears "the burden of proof" of establishing jurisdiction. *Fagan v. U.S. Dist. Court for S. Dist. of New York*, 644 F. Supp. 2d 441, 447 n.7 (S.D.N.Y. 2009) (internal quotation marks omitted).

http://161.11.133.89/ParoleBoardCalendar/details.asp?nysid=02891576K. The Court therefore dismisses Plaintiff's claims for injunctive or declaratory relief against Defendants, who were or are employed at Orange County, as moot. *See Salahuddin v. Goord*, 467 F.3d 263 , 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (explaining that "[w]here a prisoner has been released from prison, his [or her] claims for injunctive relief based on the conditions of his [or her] incarceration must be dismissed as moot" (emphasis omitted)); *see also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss the Complaint and Atkin's Motion to Dismiss the Cross-Claim are granted. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of the Amended Complaint is without prejudice.

Should Plaintiff choose to file a Second Amended Complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The Second Amended Complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, this Action could be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 56), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: March 29, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE